[Cite as *State v. Pierce*, 2014-Ohio-4982.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-G-3103** |
| RICKY H. PIERCE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Geauga County Court of Common Pleas, Case No. 12 C 000012.

Judgment: Modified and affirmed as modified.

*James R. Flaiz,* Geauga County Prosecutor, and *Nicholas A. Burling,* Assistant Prosecuting Attorney, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee).

*Derek Cek,* 2725 Abington Road, #102, Fairlawn, OH 44333 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Ricky H. Pierce, appeals from the judgment of conviction entered by the Geauga County Court of Common Pleas. For the reasons discussed in this opinion, we modify the judgment of the trial court and affirm the entry as modified.

{¶2} On February 6, 2012, appellant was indicted on one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4), a felony of the third degree. The charge arose from an allegation that appellant touched his seven-year-old granddaughter's

vaginal area while he was babysitting the child. When confronted by his son, appellant did not dispute or deny his conduct. On June 7, 2012, appellant pleaded guilty to the indictment. The trial court ordered a presentence investigation report ("PSI"), which revealed appellant had been previously convicted of sexual battery in Florida in 1982. The conviction was a result of a sexually oriented offense committed against his then seven-year-old daughter. Appellant served four years in prison for that crime.

{¶3} At the sentencing hearing, appellant took full responsibility for the underlying offense, and defense counsel stated appellant was prepared to accept whatever punishment the court deemed appropriate. After considering the statements of appellant, the statements of counsel for both sides, a victim impact statement, and the PSI, the trial court sentenced appellant to five years in prison and a $10,000 fine. The trial court also imposed costs.

{¶4} The trial court appointed counsel for appellant's appeal. Counsel ultimately filed a brief, pursuant to *Anders v. California*, 386 U.S. 738 (1967). The brief was served upon appellant. This court issued a judgment giving appellant 30 days to raise additional arguments in support of the underlying appeal. Appellant failed to meet this deadline. On April 29, 2013, however, appellant filed a "motion to file supplemental assignments of error" with a pro se brief attached. After receipt of appellant's motion, this court issued a judgment permitting prior counsel to withdraw. And, after an independent review of the proceedings below, two members of the judicial panel in this case concluded the record disclosed colorable issues to support appellant's direct appeal. This court set forth those issues, appointed new counsel, and advised new counsel to review the issues set forth in appellant's pro se brief.

**{¶5}** Appellant's first assignment of error provides:

**{¶6}** "The trial court's sentence was contrary to law and an abuse of discretion when the trial court demonstrated judicial bias and failed to properly weigh the seriousness and recidivism factors of R.C. 2929.12."

**{¶7}** "[A]ppellate courts must apply a two-step approach when reviewing felony sentences. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse-of-discretion standard." *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, ¶26.

**{¶8}** Appellant initially contends certain comments made by the trial court at the sentencing hearing indicate the sentence was a product of bias and thus an abuse of discretion. Appellant challenges three particular statements. First, he objects to the trial judge's reference to his status as a grandfather. Next, appellant objects to the court's characterization of him as "not normal." And, finally, he objects to the trial court referring to him as a pervert after his sentence was imposed.

**{¶9}** It is axiomatic that judicial bias in criminal proceedings is fundamentally unfair and violates a defendant's right to due process of law. *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, ¶34, citing *Rose v. Clark*, 478 U.S. 570, 577 (1986). Judicial bias involves "a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind

3

which will be governed by the law and the facts." *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.

{¶10} The Supreme Court of Ohio has observed:

{¶11} "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." On the other hand, "[t]hey *may* do so [support a bias challenge] if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." (Emphasis sic.) *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶49, quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994).

{¶12} Prior to imposing sentence, the trial court stated:

{¶13} There are a number of things that stand out in your situation. You have no reason to know this, although it should be common to everybody, I take great pleasure and pride in being a grandfather. But that's also an imposition of trust. It's one of the greatest events that anybody can have having a grandchild. But the trust is just

4

with normal people, and you are not normal, that you're going to do what you can to help and protect them. And I frankly cannot imagine the hurdle that your son had to overcome, especially with his wife, in saying I've got a Dad who's molested my sister but he's reformed. He's better. They're obviously people of faith and they extended even more trust to you. And you just ripped that asunder. You tore it apart.

{¶14} After imposing the five-year prison term and the fine, the court further commented: "You've not only destroyed this family but what you have done is implanted or I guess re-emphasized that once a pervert always a pervert. Maybe you can get over it. Maybe not. But nobody is ever gon'na trust you again."

{¶15} We do not perceive the trial judge's comments to be products of prejudicial bias.

{¶16} When the trial judge identified himself as a grandfather, he was not only drawing on his personal experience, but underscoring the special trust society reposes in the relationship between a grandparent and a grandchild. And, the trial court's characterization of appellant as "not normal" served to highlight that appellant's criminal conduct, to which he admitted full responsibility, placed him clearly outside the norm, i.e., not actions of an average, law-abiding citizen. Finally, by designating appellant a "pervert," the trial court was making a descriptive statement, albeit indelicately; namely, that appellant, by molesting his daughter 30 years ago and his granddaughter in 2012, he engaged in sexually deviant behavior that is socially and legally unacceptable.

5

{¶17} The crime appellant committed represented the second time he betrayed his family's trust by molesting a member with whom he had a relationship of trust. The trial judge, in making his statements, was emphasizing that, by violating the trust of his family and engaging in incestuous criminal conduct, appellant's actions were particularly heinous. The trial court's statements were founded on facts taken from the record, and not an extra-judicial source. And, although the statements reflect the trial court's opinions about the circumstances of the crime to which appellant pleaded guilty, they do not indicate the judge possessed a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky, supra.* We therefore hold the trial court did not exhibit a bias in sentencing appellant that would necessitate a reversal of the sentence.

{¶18} Appellant next argues the trial court failed to give proper consideration to the seriousness and recidivism factors. We do not agree.

{¶19} The overriding purposes of felony sentencing in Ohio "are to protect the public from future crime by the offender * * * and to punish the offender." R.C. 2929.11(A). "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶20} It is well-recognized that a sentencing court "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). And the Ohio Supreme Court has observed a sentencing court has "full discretion to impose a prison sentence within the statutory range." *State v. Mathis*, 109

Ohio St.3d 54, 2006-Ohio-855, paragraph three of the syllabus; *State v. Ries*, 11th Dist. Portage No. 2008-P-0064, 2009-Ohio-1316, ¶13 ("[s]uch discretion is plenary").

**{¶21}** Moreover, although a trial court must consider the seriousness and recidivism factors set forth under R.C. 2929.12, it is not required to make factual findings pursuant to those factors. *State v. ONeil*, 11th Dist. Portage No. 2010-P-0041, 2011-Ohio-2202, ¶34. And, absent some evidence to the contrary, an appellate court will presume all relevant statutory factors were considered. *See e.g. State v. Tyler*, 11th Dist. Portage No. 2012-P-0041, 2013-Ohio-3393, ¶17. "[T]he trial court is not obligated, in the exercise of its discretion, to give any particular weight or consideration to any sentencing factor." *State v. Holin*, 174 Ohio App.3d 1, 2007-Ohio-6255, ¶34, (11th Dist.).

**{¶22}** The trial court's comments at the sentencing hearing, discussed above, demonstrate it considered the seriousness of the crime as well as his likelihood to recidivate. Moreover, in its judgment entry, the trial court stated appellant's sentencing order was premised upon its consideration of the record and other information submitted at the sentencing hearing, including his ability to pay financial sanctions. The court further stated it considered the purposes and principles of felony sentencing and the seriousness and recidivism factors. Under the circumstances, we hold the court met its statutory obligations and did not abuse its discretion in sentencing appellant to the maximum term of imprisonment and the maximum fine.

**{¶23}** Appellant's first assignment of error is without merit.

**{¶24}** Appellant's second assignment of error provides:

7

{¶25} "The trial court erred by imposing court costs without notifying appellant of the possibility of community service in lieu of paying court costs."

{¶26} Under his assignment of error, appellant asserts the trial court failed to comply with the requirements of R.C. 2947.23(A)(1)(a) when it imposed costs. R.C. 2947.23 has been amended since appellant's sentencing, but at the time of sentencing, it provided, in relevant part:

{¶27} In all criminal cases, including violations of ordinances, the judge or magistrate shall include in the sentence the costs of prosecution, including any costs under section 2947.231 of the Revised Code, and render a judgment against the defendant for such costs. At the time the judge or magistrate imposes sentence, the judge or magistrate shall notify the defendant of both of the following:

{¶28} (a) If the defendant fails to pay that judgment or fails to timely make payments towards that judgment under a payment schedule approved by the court, the court may order the defendant to perform community service in an amount of not more than forty hours per month until the judgment is paid or until the court is satisfied that the defendant is in full compliance with the approved payment schedule.

{¶29} In relevant part, the 2012 amendment, effective March 22, 2013, substituted, in the second sentence of the language of section (A)(1)(a), "If" for "At the time," and substituted "a community control sanction or other nonresidential sanction"

8

for "sentence," and also inserted the phrase "when imposing the sanction" to that sentence.

{¶30} Because appellant's sentence was entered before the effective date of the amendment, former R.C. 2947.23 applies. At no point in the proceedings was appellant provided with the proper statutory advisement regarding costs. The trial court's failure to advise appellant was therefore error. This court, however, has recently held that the proper remedy for such an error is to modify the judgment of the trial court to eliminate the possibility that community service may be imposed in lieu of payment of court costs. *State v. Gates*, 11th Dist. Portage No. 2011-P-0001, 2013-Ohio-4284, ¶4-5; *see also State v. Dye*, 11th Dist. No. Portage No. 2011-P-0097, 2013-Ohio-4285, ¶17. While the trial court's omission was error, under these circumstances, it does not rise to the level of reversible error.

{¶31} We therefore hold, as a result of the trial court's failure to properly inform appellant of the possibility that community service could be ordered in lieu of unpaid court costs, such an order cannot be entered against him. The judgment of the trial court is hereby modified to remove the possibility that community service may be ordered should appellant fail to pay court costs. In this regard, the trial court's judgment is modified and affirmed as modified.

{¶32} Appellant's second assignment of error is without merit.

{¶33} Appellant's final assignment of error provides:

{¶34} "Appellant was denied effective of [sic] assistance of counsel by trial counsel's failure to file an affidavit of indigency prior to sentencing and failure to object to a maximum fine at sentencing."

9

{¶35} In evaluating ineffective assistance of counsel claims, Ohio appellate courts apply the two-part test enunciated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). First, it must be determined that counsel's performance fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Second, it must be shown that prejudice resulted. *Id.* To demonstrate prejudice, a defendant must establish there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at paragraph three of the syllabus. *See also State v. Woodard*, 11th Dist. Ashtabula No. 2009-A-0047, 2010-Ohio-2949, ¶11.

{¶36} The failure to file an affidavit attesting to a defendant's indigency establishes ineffective assistance of counsel only when the record demonstrates a reasonable probability that the trial court would have found the defendant indigent and unable to pay the fine had the instrument been filed. *State v. McDowell*, 11th Dist. Portage No. 2001-P-0149, 2003-Ohio-5352, ¶75.

{¶37} In this case, appellant's PSI reveals he was earning $12.84 per hour as a paramedic at the time of his arrest. The probation officer who prepared the PSI additionally verified appellant would not be considered for rehire after his release from prison. The PSI further indicated that appellant had no assets at the time the PSI was prepared and his collective debts totaled $3,000. With respect to education, appellant graduated from high school and attended college for two years, but was five credit hours short of obtaining an associates of arts degree. And, although he had certificates as an EMT and paramedic, his conviction would apparently prevent him from returning to this line of work. Finally, the record included information that appellant, a 54-year-

10

old man, was in poor health at the time of sentencing; to wit, he had, inter alia, diabetes mellitus, hyperlipidemia, a herniated disc, a liver cyst, and hypertension.

{¶38} The facts surrounding appellant's financial condition are sufficient to establish a reasonable probability that, but for counsel's omission, appellant would have been deemed indigent prior to sentencing. And, appellant's health conditions serve to suggest appellant may have difficulty obtaining employment after his release. Notwithstanding this point, however, the trial court stated in its judgment entry that it had considered appellant's ability to pay the sanctions.

{¶39} Pursuant to R.C. 2929.19(B)(5), a court must "consider the offender's present and future ability to pay the amount of sanction or fine" prior to imposing the sanction. A court is not required to conduct a hearing on a defendant's ability to pay nor is it required to make findings regarding the defendant's ability. *State v. McNaughton*, 11th Dist. Lake No. 2011-L-083, 2012-Ohio-1271, ¶30. So long as the record contains some evidence that the trial court considered the issue, a reviewing court will not disturb the court's decision. *Id.*

{¶40} With these principles in mind, the court's statement that it considered the defendant's ability to pay satisfies the requirement of R.C. 2929.19(B)(5). Appellant has consequently failed to establish the court would have deemed him unable to pay the fine had the affidavit been filed. Appellant has therefore failed to establish a reasonable probability that, but for counsel's omission, the outcome of the proceedings would have been different.

{¶41} Appellant's third assignment of error is without merit.

{¶42} For the reasons discussed in this opinion, the judgment of the Geauga County Court of Common Pleas is modified and affirmed as modified.

TIMOTHY P. CANNON, P.J., concurs with a Concurring Opinion,

DIANE V. GRENDELL, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

TIMOTHY P. CANNON, P.J., concurring.

{¶43} I concur with the judgment, and I concurred with the appointment of counsel in this case. The dissent characterizes the approach of the other members of this court as "a waste of taxpayers' money." I do not believe this is an accurate or appropriate description of a court's decision to follow nearly 50 years of precedent established by the U.S. Supreme Court and the Ohio Supreme Court. *See, e.g., Anders v. California*, 386 U.S. 738, 744 (1967) (explaining that after a full independent review of the record, if the court finds any arguable legal points, it must appoint new counsel to argue the appeal); *State v. Gibbs*, 11th Dist. Geauga No. 2012-G-3123, 2014-Ohio-1341, ¶31 (only after the appellate court conducts its own independent review of the record and finds no arguable legal points on the merits may the court grant appellate counsel's request to withdraw without appointing new counsel to represent defendant).

{¶44} Because this court's independent review of the proceedings below disclosed legal points arguable on the merits, this court properly appointed new appellate counsel. Appointment of new appellate counsel allows appellant to "vindicate the constitutional right to appellate counsel." *Smith v. Robbins*, 528 U.S. 259, 273

12

(2000). Failure to appoint new appellate counsel would have deprived appellant of his Sixth Amendment rights. If this court had identified an error, analyzed it, and ruled on it—without affording the state an opportunity to respond and without counsel participating on appellant's behalf—this court would have been advocating, which obviously should be avoided.

_____

DIANE V. GRENDELL, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶45} I concur in the judgment and the substantive analysis of the majority's opinion as it relates to the first and third assignments of error. I write separately, however, to address the flaws in the procedure followed in this appeal and to dissent from the majority's decision to modify and affirm as modified as to the second assignment of error regarding the issue of community service.

{¶46} In this case, an *Anders* brief was submitted by Pierce's original appellate counsel, asserting that the appeal had no merit. The writing judge, in a May 31, 2013 Judgment Entry, unilaterally found that colorable issues existed regarding the imposition of court costs upon Pierce without notification of the possibility of being ordered to perform community service, as well as the potential ineffectiveness of counsel for failing to raise Pierce's indigent status for the purposes of avoiding a fine. The Judgment Entry then appointed a new attorney to address these "and any other issues."

{¶47} As an initial matter, it must be emphasized that the foregoing characterization of the writing judge's actions as unilateral is based on the fact that the writing judge, by herself, signed and journalized the judgment entry appointing new

13

counsel. The Ohio Supreme Court has long established that courts in Ohio officially act only through their written and journalized decisions. *State ex rel. Nelson v. Griffin*, 103 Ohio St.3d 167, 2004-Ohio-4754, 814 N.E.2d 866, ¶ 7 ("courts speak only through journalized entries"); *State ex rel. Marshall v. Glavas,* 98 Ohio St.3d 297, 2003-Ohio-857, 784 N.E.2d 97, ¶ 5. Ohio appellate court decisions are journalized when they are filed with the appropriate clerk of court. App.R. 22(C).

{¶48} The judgment entry appointing new counsel bore only the signature of Judge Rice. The name of a second or concurring appellate judge from this court appears nowhere in or on that journalized judgment entry. As reflected by the writing judge's judgment entry appointing new counsel, the writing judge, as a matter of this court's official records, was the sole person to act. Thus, while the majority states that "this court issued a judgment permitting prior counsel to withdraw" and outlining colorable issues for review, based on the conclusion of "two members of the judicial panel" that colorable issues exist, the indisputable fact remains that the judgment entry itself was issued solely by the writing judge. *Supra* at ¶ 4.

{¶49} Regarding the procedural aspects of this case, this matter should have been resolved without appointing additional counsel, at the taxpayers' expense, to brief the community service issue, as well as the additional arguments that have been briefed and rejected by this court. Further briefing added nothing of value to the community service analysis and did not change the ultimate disposition of the case, especially given that the law of this court clearly establishes that the community service advisement was required. No harm or Due Process deprivation would have been caused to Pierce by following the foregoing course of action, since a reversal, without

14

yet another appointment of counsel, benefits Pierce and would allow him to be properly advised by the trial court.

**{¶50}** Several districts have applied this approach in *Anders* cases, remanding to the trial court for limited purposes, without appointing new counsel or requiring additional briefing, when a clear violation of the law occurred in the trial court. *State v. Marcum*, 4th Dist. Hocking No. 11CA30, 2013-Ohio-951, ¶ 4 ("given that the trial court clearly erred when it failed to orally notify [the defendant] about the imposition of court costs," a remand for the limited purpose of resolving the matter was proper, without any further briefing or appointment of new counsel); *State v. Gallardo*, 6th Dist. Ottawa No. OT-05-058, 2006-Ohio-4915, ¶ 11 (where the defendant's sentence was clearly contrary to law, resolution of the error through remand, without appointing new counsel, was proper); *State v. Shannon*, 12th Dist. Preble No. CA2003-02-005, 2004-Ohio-1866, ¶ 4-5 (since the error was plain and no other grounds for an appeal existed, reversal without the appointment of new counsel was warranted); *State v. Ross*, 4th Dist. Lawrence No. 10CA31, 2011-Ohio-1136, ¶ 13 (finding in an *Anders* case that judicial economy favored immediate remand to the trial court due to clear error in the imposition of post release control).

**{¶51}** This approach is consistent with the United States Supreme Court's primary concern in *Anders* -- recognition of the appellant's right to Due Process -- and allows appellate courts a constitutional way to avoid expending additional attorney's fees and considerable time and public taxpayers' resources in conducting unnecessary additional briefing that is not required to afford an appellant a proper review of his appeal and reversal of plain error. In this case, the additional briefing uncovered no

further errors, aside from the community service error of which this court was already aware and could have resolved through a remand. *See Shannon* at ¶ 4-5. Appointing new counsel prolonged the resolution of this matter and was not consistent with the purposes of judicial economy. *Painesville City Local Schools Bd. of Edn. v. Ohio Assn. of Pub. School Emps.*, 11th Dist. Lake No. 2005-L-100, 2006-Ohio-3645, ¶ 15 (emphasizing the importance of speedy resolutions to conflicts to foster judicial economy by "unburdening crowded court dockets") (citation omitted); *State v. Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, ¶ 28 (finding that the court's holding should "foster rather than thwart judicial economy"). Based solely on the unnecessary appointment of new counsel and the additional briefing period, a delay of over two months was added to the disposition of this appeal.

{¶52} This court was also not required under the law to appoint new counsel to brief the separate community service issue. As this court has held in *State v. Martin*, 11th Dist. Portage No. 2005-P-0097, 2007-Ohio-4961, separate counsel need not be appointed when further briefing could be performed by the defendant's initial counsel. *Id.* at ¶ 8.

{¶53} Regarding the merits of the second assignment of error, the majority concludes that, since Pierce was not informed of the possibility he could be ordered to perform community service, "[t]he judgment of the trial court is * * * modified to remove the possibility that community service may be ordered should appellant fail to pay court costs." *Supra* at ¶ 31. It would be more appropriate to reverse and remand to the trial court for the limited purpose of providing Pierce the proper community service notification.

16

{¶54} The decision to affirm as modified is not consistent with this court's recent approach in *State v. Glus*, 11th Dist. Geauga No. 2012-G-3087, 2014-Ohio-245, where we held that remand for an oral notification hearing was necessary when the State "conceded in its appellate brief that the trial court did not comply with the notification requirement in imposing court costs," but "did not agree to a modification of the sentencing judgment under which the possibility of community service would be eliminated in this instance." *Id.* at ¶ 22.

{¶55} In the present case, the opinion does not address this matter. There is no indication in the State's brief that it would be agreeable to allowing a modification of the trial court's judgment. Thus, as this court held in *Glus*, a remand would be the appropriate remedy. This is also consistent with the analysis in this court's decision in *State v. Dye*, 11th Dist. Portage No. 2011-P-0097, 2013-Ohio-4285, cited by the majority. *See Id.* at ¶ 18 (modifying the trial court's judgment to eliminate the possibility that appellant be subject to community service when this method was met with the State's approval at oral argument).

{¶56} In Judge Cannon's concurrence, he notes that he "concurred with the appointment of counsel in this case." The court's official record does <u>not</u> support Judge Cannon's statement. The official court record does not verify that Judge Cannon concurred in this decision. The Ohio Supreme Court has dictated that a court speaks <u>only</u> through the court's journal entry. *Nelson*, 103 Ohio St.3d 167, 2004-Ohio-4754, 814 N.E.2d 866, at ¶ 7. A review of Judge Rice's entry shows only <u>one</u> signature. There is no Judge Cannon signature or even reference. As a matter of Ohio Law, the absence of that information in a journal entry renders the appointment of counsel

17

decision "unilateral." There is good reason for the Ohio Supreme Court's mandate that the courts speak only through journalized entries. To allow otherwise creates a "star chamber" effect that erodes public confidence and cloaks the court in secrecy. Not only does Judge Rice's unilateral decision deprive the public of knowledge of a concurring judge, but it also deprives this judge of the opportunity to write a dissent.

{¶57} Although concurring Judge Cannon also takes issue with the assertion that the multiple appointment of counsel in this case wastes taxpayers' money, as noted throughout my opinion in the present case, various other courts, including the Fourth, Sixth and Twelfth Districts, have taken the approach that appointment of counsel is unnecessary and unwarranted in similar *Anders* cases. *See Marcum*; *Gallardo*; *Shannon*, *supra*. It follows then, that since this approach is valid, lawful, and advanced by appellate courts, the failure to remedy the error without the appointment of new counsel does indeed act as an unnecessary expenditure of taxpayers' money, for the reasons fully discussed herein.

{¶58} There is a plethora of cases that support this judge's position that courts should strive for judicial economy and not waste taxpayers' dollars. *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 56; *Wamsley*, 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45, at ¶ 28; *State v. Herring*, 21 Ohio App.3d 18, 486 N.E.2d 119 (9th Dist.1984), syllabus.

{¶59} The principle concern enunciated in *Anders* is the protection of an appellant's Due Process rights. Those rights are protected under the specific circumstances of this case by the recognition of the lower court's error and remand as proposed by this judge and followed by this court in *Glus.* As held in *Marcum, Gallardo*,

18

and *Shannon*, appointment of another counsel is unnecessary when a clear violation of the law occurred in the trial court. In this case, there was only one obvious error, easily resolvable without the appointment of another counsel or further briefing, and no other meritorious arguments existed. There is no absolute rule allowing the appointment of counsel to advance issues on appeal that are baseless or cannot come to fruition. *See State v. Burnett*, 11th Dist. Lake No. 2013-L-053, 2014-Ohio-1358, ¶ 27 (a defendant has no right "to file a baseless or frivolous appeal"). The determination not to appoint counsel would have placed Pierce at no disadvantage, since this court's conclusion would be favorable to him, and have only a positive result, both for Pierce and the taxpayers. Following this judicially recognized approach would have avoided waste of taxpayers' money in this case while still following the precedent as directed by the United States Supreme Court and the Ohio Supreme Court. *See Glus*, 2014-Ohio-245, at ¶ 22.

**{¶60}** With the foregoing reservations, I concur in the substantive analysis as to the first and third assignments of error, but would reverse and remand to the trial court on the second assignment of error, for the appropriate notification to be given to appellant.